The appellant, who was plaintiff below, substantially alleged in his petition that on April 22, 1859, I.A. and G.W. Paschal executed their note to William McLane, appellant's ancestor, for $7000, due twelve months from date, with 12 per cent interest. On the same day the Paschals, with Mary C. Paschal, wife of I.A. Paschal, to secure payment of the indebtedness, executed a trust deed upon what was designated therein as the homestead of I.A. and Mary C. Paschal, being blocks 27 and 31, in Paschal and Lewis' subdivision to upper San Antonio, also 2 1/2 acres, used as a garden, and adjoining the homestead. I.A. Paschal died in 1868, and his estate *Page 399 
was administered upon in Bexar County; the debt evidenced by the note was presented and approved as a just claim against his estate, on September 30, 1868. At the same term of the Probate Court of Bexar County, Mary C. Paschal filed her petition, praying the court to set aside to her the homestead, as well as other allowances. Objection was made on the part of McLane to any order setting aside the homestead, basing his cause on the fact that said two blocks were subject to the deed of trust given to secure said note. Upon trial of the matter, such objection was sustained, and the court, by its judgment, refused to set aside the property as a homestead. From this judgment Mrs. Paschal appealed to the District Court, which set aside the judgment of the Probate Court, and decreed the two blocks of land, as well as the 2 1/2-acre garden, to Mrs. Paschal as her homestead. In the meantime William McLane died, and H.H. McLane, appellant, who became the owner of the claim, made himself a party to the suit and prosecuted an appeal from said judgment to the Supreme Court, which, in 1877, reversed the judgment. McLane v. Paschal,47 Tex. 367.
Another trial was had in the District Court; the parties had filed additional pleadings, but the court struck them out of its own motion, for which error the cause was, on June 27, 1884, reversed and remanded a second time; the Supreme Court holding, "that in setting apart the homestead, the court should have included the improvements, as well as the lots upon which they were situated, in estimating the $2000 in value of homestead exemption to which the widow was entitled as against the claim of the beneficiary in the deed of trust." McLane v. Paschal,62 Tex. 105-107. The third and last trial in the District Court was had on the 3rd day of October, 1888, which resulted in a judgment for Mrs. Paschal, and McLane again appealed, and the Supreme Court, on May 10, 1889, affirmed it. McLane v. Paschal,74 Tex. 20.
This suit was filed in the Thirty-seventh Judicial District, on the 3rd day of May, 1892, to vacate and annul the judgment resulting from the last trial, and to have the cause tried again. The grounds alleged therefor were, that the last "trial was had in this court under and pursuant to rules, regulations, and modes of procedure set out in a volume known as `The Revised Statutes of Texas,' and pretended and attempted amendments thereto. That the rules of procedure which prevailed at the trial were not the laws and statutory rules, regulations, and procedure of the State of Texas, but on the contrary were widely different from the real and true statutes and legal procedure of the State, and were the intent, purpose, judgment, will, and work of one John Lyle, who made, codified, and promulgated the said alleged code or statute containing the civil procedure which governed said trial, and who was never thereunto empowered by the Constitution of the State or other competent authority. That the alleged statutes purport to be an act passed by the Sixteenth Legislature of the State of Texas, on the 21st day of February, 1879; but plaintiff distinctly *Page 400 
states, that the alleged Civil Code prescribing the practice, by which the supposed trial was governed, is not an act of any Legislature, but on the contrary is a false pretense to that effect, and is only apparently authenticated, the certificate thereto being absolutely false. That he was not aware of the facts alleged relative to the invalidity of the Code of Civil Procedure, by compliance with which the supposed judgment was reached by which he has been deprived of his property without due process of law, during said supposed litigation, nor thereafter until about the month of November, 1889, when he was legally advised that said Code of Civil Procedure was invalid, and that the Penal Code of Criminal Procedure was invalid for similar reasons. That litigation was instituted for the purpose of overthrowing said Penal Code, and plaintiff forebore to bring this suit till action had been taken by the Supreme Court of the United States in the matter of the Criminal Code; but that neither court of last resort, of either State or Nation, has ever yet passed upon the facts here presented, and that he is compelled to bring this action to determine his rights. That he was misled by the certificate of the Secretary of State to believe that the alleged statutes complained of were genuine, that said false certificate was accepted by the courts as true, and the Code of Civil Procedure as valid law, which deceived plaintiff and prevented him from prosecuting this action, as he would otherwise have done, immediately upon the decision of the Supreme Court of this State, remanding this cause for rehearing, on the 27th day of June, 1884."
To appellant's petition the appellees demurred generally and specially, that it appeared therefrom his cause of action, if he ever had any, had long before the institution of this suit been regularly and fully tried and finally determined and adjudicated by the courts of first and last resort of this State, being courts of competent jurisdiction, and having full and complete jurisdiction over the parties and the subject matter; that appellant was a party to such suits, and bound thereby; and because it appeared from said petition that his cause of action was barred by the several statutes of limitations.
These demurrers were sustained by the District Court, and the plaintiff declining to further amend his pleadings, final judgment was entered dismissing his suit, from which he has appealed.
The assignment of errors questions the correctness of the court's rulings on the demurrers.
Appellant's petition assails the validity of the Revised Statutes of the State of Texas, upon the ground that it is "not an act of any Legislature, but on the contrary is a false pretense to that effect."
The caption of the act complained of is as follows:
"A Bill, to be entitled `An Act to Adopt and Establish the Revised Civil Statutes of the State of Texas.'
"Whereas, it is expedient that the General Civil Statutes of the State should be arranged in appropriate titles, chapters, and articles; that *Page 401 
the omissions and defects therein should be supplied and remedied; and that the whole should, as far as practicable, be made concise, plain, and intelligible; therefore,
"Section 1. Be it enacted by the Legislature of the State of Texas, That the following titles, chapters, and articles shall hereafter constitute the Revised Statutes of the State of Texas."
Then follows the various titles, chapters, and articles comprising the Revised Statutes, to which is appended the following certificate:
"The foregoing act was presented to the Governor of Texas for his approval on the twenty-eighth day of February, 1879, at eleven o'clock and forty minutes a.m., and was not signed by him nor returned to the house in which it originated, with his objections thereto, within the time prescribed by the Constitution, and thereupon became a law without his signature.
"JOHN D. TEMPLETON, "March 17, 1879. "Secretary of State."
We regard the following propositions, which we quote from appellees' brief, as well established principles of law, and as conclusively settling this case against appellant:
"First. The validity of the enactment of the Texas codes is not open to inquiry.
"Second. An authenticated statute will be regarded as the best evidence that the required formalities were observed in its passage, and the courts will not exercise the power of going behind it, and inquiring into the manner of its enactment.
"Third. Where an act has been passed by the Legislature, signed by the proper officers of each house, approved by the Governor, and filed in the office of the Secretary of State, it constitutes a record which is conclusive evidence of the passage of the act as enrolled. Neither the journals kept by the Legislature, nor the bill as originally introduced, nor the amendments attached to it, nor parol evidence, can be received in order to show that an act of the Legislature, properly enrolled, authenticated, and deposited with the Secretary of State, did not become a law. The court, for the purpose of informing itself of the existence or terms of a law, can not look beyond the enrolled act, certified to by those officers who are charged by the Constitution with the duty of certifying and with the duty of deciding what laws have been enacted." Usener v. The State, 8 Texas App., 177; The State v. Swift, 10 Nev. 176; In re Dick Duncan, 139 U.S. 453; Sherman v. Story, 30 Cal. 253; Day Co. v. The State, 68 Tex. 526; Ex Parte Tipton, 28 Texas App., 438; Pangborn v. Young, 32 N.J. Law, 29; Leeper v. Texas, 139 U.S. 462, 468; Blessing v. Galveston,42 Tex. 641; Miller v. The State, 3 Ohio St. 483; Duncan v. McCall, 139 U.S. 462; Field v. Clark, 143 U.S. 649, and authorities there cited in brief of appellee. *Page 402 
It is urged by appellant, that the demurrers must be taken to admit the truth of his allegations as to the invalidity of our Revised Statutes. A court must take judicial knowledge of the validity of the statutory laws of the State in which it exists. Otherwise the validity of its creation and existence might be questioned in the trial of every cause brought before it. This judicial knowledge can not be overthrown by the constructive admission made by a party on demurrer. If it could, a court would often find from such fiction no laws to expound or enforce, or even to warrant its existence.
For over thirteen years prior to the institution of this suit the validity of the Revised Statutes had been recognized and acted upon by all the departments of our State government; and, with its amendments, regarded by the people of Texas as the only statutory law of the State. And to hold that the act by which they were passed is not an act of the Legislature, but a mere "pretense and fraud," would be to declare our State government, from the date of the alleged fraud, simply a joke; and the judgments, decrees, and sentences of its courts, which purport to settle and dispose of questions of life, liberty, and property, not even shadows of realities. This court will make no such declaration, but recognizes and declares such statutes the written law of Texas, under and by virtue of which it was proper to try appellant's case on the 3rd day of October, 1888.
The refusal of the court to grant appellant's motion to transfer this cause to the Forty-fifth Judicial District is also assigned as error. It is urged, under this assignment, by appellant's counsel, that the Thirty-seventh Judicial District, wherein he brought this suit and it was tried, did not have jurisdiction of the subject matter. It is provided that these judicial districts shall have concurrent jurisdiction throughout the limits of Bexar County of all matters civil and criminal of which jurisdiction is given to the District Court by the Constitution and laws of this State. Acts 21st Leg., p. 166. The court in which the suit was instituted having jurisdiction, no reason is shown why it should have been transferred to the Forty-fifth District, created by an act of the Legislature which appellant in his brief says "is palpably unconstitutional." If appellant's object was to have his cause tried under laws deemed by him constitutional, it is strange that he should have desired it transferred to a court which meets with no more favor in his eyes than our Revised Statutes.
The judgment of the District Court is affirmed.
Affirmed.
JAMES, Chief Justice, did not sit in this cause. *Page 403